**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Charles David Full, Jr. and<br>Amy Beth Full,<br><br>                         Debtors. | C/A No. 09-5650-JW<br><br>Chapter 13<br><br>**ORDER**<br><br>**(1) DENYING DEBTORS'<br>MOTION TO COMPEL;<br>(2) DECIDING CERTAIN ISSUES<br>RELATED TO WELLS FARGO'S<br>MOTION FOR RELIEF FROM<br>AUTOMATIC STAY; AND<br>(3) SETTING FURTHER HEARING** |

This matter comes before the Court upon the Motion to Compel Discovery Responses (the "Discovery Motion") filed by Charles David Full, Jr. and Amy Beth Full (together, the "Debtors") on July 19, 2012, and the Motion for Relief from Stay (the "362 Motion" and together with the Discovery Motion, the "Motions") filed by Wells Fargo Bank, NA ("Wells Fargo" and together with the Debtors, the "Parties") on May 1, 2012 with respect to 1663 Summerlin Lane, Loris, South Carolina and a 2003 Redman (28 x 72) Doublewide Mobile Home, VIN No. 14104236A-B (collectively, the "Collateral").[1]  On May 15, 2012, the Debtors filed an objection to the 362 Motion (the "362 Objection").  On August 6, 2012, Wells Fargo filed its objection to the Discovery Motion (the "Discovery Objection").  On August 8, 2012, the Parties filed the Joint Statement of Dispute and Stipulation (the "Joint Statement"), which set forth their view of the issues to be decided by the Court and the positions of the Parties.

---

[1]    The 362 Motion is the third motion for relief from stay filed by Wells Fargo in this case.  The first motion for relief from stay was withdrawn because the Debtors subsequently brought the loan current and the second motion for relief from stay was withdrawn because the Debtors applied for a loan modification, which was denied.

The Court held a hearing on the Motions on August 23, 2012 (the "Hearing") and continued the Hearing to a date not yet determined by the Court.[2] Following the Hearing, counsel for Wells Fargo and the Debtors submitted certain documents requested by the Court at the Hearing for an *in camera* review. After considering the Motions, the Discovery Objection, the 362 Objection, the documents submitted by the Parties, and the arguments of the Parties at the Hearing, the Court hereby makes the following findings of fact and conclusions of law:[3]

## **FINDINGS OF FACT**

1. The Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on July 31, 2009 (the "Petition Date").

2. Prior to the Petition Date, Wells Fargo made a loan to the Debtors in the amount of $110,200.00, as evidenced by a note dated June 14, 2005 (the "Note"). The Note was secured by a mortgage on the Collateral in favor of Wells Fargo (the "Mortgage").[4]

3. On Schedule D, the Debtors listed Wells Fargo as a secured creditor and indicated that Wells Fargo's claim was disputed.[5] The Debtors also listed an average monthly payment of $1,021.00 to Wells Fargo for their residence on their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

---

[2] A hearing on the Discovery Motion was originally scheduled for August 8, 2012, but was continued to August 23, 2012. In addition, a hearing on the 362 Motion was originally scheduled to be heard on May 22, 2012, but was continued twice upon the request of the Debtors and Wells Fargo.

[3] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

[4] At the Hearing, Wells Fargo presented original copies of both the Note and the Mortgage. Wells Fargo also presented copies of the Note and the Mortgage as Exhibits 1 and 2, respectively, to the Court at the Hearing.

[5] In several of the documents attached to the petition, the Debtors refer to Wells Fargo as "Wells Fargo Home Finance." For purposes of this Order, the Court finds that, based on the Note and the Mortgage provided to the Court at the Hearing by Wells Fargo, Wells Fargo Home Finance and Wells Fargo, N.A. appear one and the same.

4. The Debtors' Chapter 13 Plan (the "Plan") provided that the Debtors were current on their obligations to Wells Fargo as of the Petition Date and agreed to continue regular payments directly to Wells Fargo. On November 3, 2009, the Court entered an order confirming the Plan. At the time of confirmation, the Debtors did not challenge Wells Fargo's standing or raise any issues that Wells Fargo was not the holder of debt entitled to recover payment. Furthermore, the Debtors continued to make payments to Wells Fargo upon confirmation of the Plan and made partial payments until at least April 2012.

5. On February 27, 2012, Wells Fargo sent a letter to the Debtors indicating that their request for a loan modification under Home Affordable Modification Program (HAMP) was denied. On March 27, 2012, Wells Fargo sent a second letter to Debtors' counsel indicating that the Debtors' request for a loan modification or payment reduction was also declined. Copies of the February 27, 2012 letter and the March 27, 2012 letter were presented to the Court at the Hearing by Wells Fargo as Exhibit 4.

6. On May 1, 2012, Wells Fargo filed the 362 Motion. Based on the amended certification of facts filed by Wells Fargo on May 24, 2012, the fair market value of the Collateral was $110,000 with liens on the Collateral totaling $93,960.01 and estimated $16,039.99 of equity in the Collateral.[6] In addition, Wells Fargo noted that postpetition payments were not made pursuant to the terms of the Note, the Mortgage and the Plan, resulting in a total postpetition amount due of $6,675.20 as of May 1, 2012, which included fees of $676.00. To date, the Debtors have not filed a motion to modify the Plan.

---

[6] In both the 362 Motion and Wells Fargo's amended certification of facts, Wells Fargo identifies Debtors' Schedule A as the source of the value used for the Collateral, which would be the value of the Collateral as of the Petition Date. The Court notes that while the 362 Objection classifies the value of the Collateral as "$110,000 or more," Debtors' Schedule A provides a value of $110,000 for the Collateral and the Court is not aware of any amendment to that amount. At the Hearing, Wells Fargo presented a copy of a broker's price opinion dated January 16, 2012 to the Court at the Hearing as Exhibit 9, which stated that the estimated value of the Collateral was $85,000.

7. On May 15, 2012, the Debtors filed the 362 Objection in which the Debtors "question Movant's standing as a party in interest to seek relief from stay under [section] 362(d) and demand that [Wells Fargo] prove such standing." The Debtors also alleged that any delinquency in payment on behalf of the Debtors was based on the Debtors attempt to modify their loan with Wells Fargo and that Wells Fargo instructed the Debtors that partial payments would be allowed during the modification process. In addition, the Debtors raised issues as to Wells Fargo's technical compliance with this Court's Local Rules and Forms. Finally, the 362 Objection included a request for the denial of Wells Fargo's attorneys' fees along with an award of actual and punitive damages as appropriate.

8. On June 4, 2012, counsel for the Debtors served Wells Fargo with discovery requests (the "Discovery Requests") related to the 362 Motion. Copies of the Discovery Requests were attached as exhibits to the Discovery Motion. The Discovery Requests included thirty-one (31) requests for admission, fourteen (14) requests for production, and five (5) interrogatories.

9. In an apparent response to the Debtors' substantial discovery requests and the issues raised in the 362 Objection, on June 5, 2012, Wells Fargo authorized its counsel, Rogers, Townsend & Thomas, PC ("RTT"), to proceed under a different provision of the parties' Retainer Agreement, which expressly provided for representation of Wells Fargo on an hourly basis for litigation matters involving discovery. With RTT's assistance, Wells Fargo appears to have responded timely to the Discovery Requests or otherwise objected to such requests.

10. On July 19, 2012, the Debtors filed the Discovery Motion, which asserted that Wells Fargo failed to provide complete answers and responses to the Discovery

4

Requests. The Discovery Motion sought to, among other things, (i) compel immediate discovery responses by Wells Fargo; (ii) prevent Wells Fargo from presenting any witness at the hearing on the 362 Motion; (iii) deem admitted all improperly denied or objected to requests for admission; (iv) grant reasonable Debtors' attorney fees and costs for the prosecution of the Discovery Motion; and (v) prohibit Wells Fargo from charging any of its attorney fees or costs to the Debtors or the Chapter 13 estate.

11.    On August 6, 2012, Wells Fargo timely filed its Discovery Objection, arguing that it properly preserved its objections to the Discovery Requests by objecting to the particular requests themselves. In addition, Wells Fargo asserted that it complied with the Discovery Requests to the best of its ability and supplemented its responses to the Discovery Requests when possible. Furthermore, Wells Fargo argued that the Discovery Motion unnecessarily focused on immaterial issues of form rather than the substance of the discovery responses.

12.    On August 8, 2012, the Parties filed the Joint Statement. In addition, counsel for the Parties participated in a status conference with this Court to address possible settlement and progress related to the Motions.[7] During the status conference, the Court expressed concern for the overcomplication of the matter and suggested that the Parties discuss a reasonable means of curing the payment arrearage over the life of the Plan with a provision that upon future default, relief from the stay would be granted without further hearing upon the filing of an affidavit of default by Wells Fargo.[8] In addition, the Court instructed the Debtors to resume making payments to Wells Fargo by escrowing such

---

[7]    On August 20, 2012, Wells Fargo filed a motion seeking to continue the Hearing. However, upon the objection of the Debtors, Wells Fargo subsequently withdrew the continuance request.

[8]    In this District, postpetition motions for relief from the automatic stay based upon the failure to pay are frequently resolved by settlement orders that provide a cure period for the debtor along with a corresponding provision for relief from the automatic stay without future hearing upon default.

5

payments with their attorney, which Mr. Cantrell indicated that the Debtors were already doing. The Parties did not reach a settlement prior to the Hearing.

13.    At the Hearing, the Debtors raised issues regarding Wells Fargo's standing to bring the 362 Motion as well as the collectability of attorneys' fees for both sides. In addition, counsel for the Debtors asserted that Wells Fargo should be required to prosecute the 362 Motion, comply with the Discovery Requests, and respond to the Discovery Motion in accordance with the flat fee arrangement between Wells Fargo and RTT. Based on the representations made by Debtors' counsel during the Hearing, it was unclear whether the Debtors' income, including Mrs. Full's salary from returning to work following unpaid maternity leave, would provide the Debtors with the ability to catch up on the payments owed to Wells Fargo.

14.    In response, Wells Fargo argued that relief from the automatic stay with respect to the Collateral was appropriate for cause based on the Debtors' failure to comply with the terms of the Plan. In addition, Wells Fargo noted that, even if the Debtors were able to catch up the missed mortgage payments over the remaining term of the Plan, the attorneys' fees incurred under the Note as a result of the Discovery Requests and the Discovery Motion would require higher payments. Finally, Wells Fargo argued that its attorney fees were reasonable and necessary and that it was appropriate to switch from a flat fee billing rate pursuant to the Retainer Agreement to hourly fee billing upon the receipt of the Discovery Requests and the Discovery Motion.

15.    The Parties agreed that the current mortgage arrearage, without collection costs and attorneys' fees through August 2012, was approximately $9,000 and would be approximately $10,000 once the September 1, 2012 payment came due.

16. At the Hearing, RTT submitted an Affidavit of Attorneys' Fees and Costs (the "Fee Affidavit"), setting forth the fees incurred by RTT in connection with its representation of Wells Fargo in the prosecution of the 362 Motion, responses to the Discovery Requests, and the defense of the Discovery Motion. As set forth in the Fee Affidavit, RTT incurred legal fees of $21,165.00 and expenses $205.82 in its representation of Wells Fargo regarding the prosecution of the 362 Motion, responses to the Discovery Requests, and objection to the Discovery Motion.[9]

17. Wells Fargo also offered the original (endorsed) versions of the Note and the Mortgage at the Hearing and presented to the Court at the Hearing by Wells Fargo as Exhibits 1 and 2 respectively.

18. At the conclusion of the Hearing, the Court instructed the Debtors to file amended Schedules I and J (the "Amended Schedules") to reflect and update their current income and expenses. The Court also instructed the Parties to submit the following documents for *in camera* review:

    a. the retainer agreement between Wells Fargo and RTT (the "Retainer Agreement");

    b. unredacted correspondence authorizing RTT to transition from flat rate billing to hourly billing (the "Correspondence"); and

---

[9] The amounts provided in the Fee Affidavit run through August 16, 2012 and include the original portion of RTT's representation of Wells Fargo that was performed on a flat fee basis. Given the date of the Fee Affidavit, the Court must assume that these amounts will increase based upon RTT's attendance at the Hearing, correspondence received by the Court from RTT following the Hearing, and proposed orders submitted by RTT to the Court in connection with the extension of the deadline for Wells Fargo to respond to the Debtors' objection to claim.

  c. an itemized breakdown of attorney's fees incurred by Debtors' counsel in connection with the 362 Motion and the Discovery Motion (the "Fee Breakdown").[10]

19. On August 31, 2012, Debtors' counsel provided the Court with the Fee Breakdown, which stated that Mr. Cantrell incurred total fees of $10,028 through such date. The Fee Breakdown covered Mr. Cantrell's defense of the 362 Motion, prosecution of the Discovery Motion, and a recent objection to the claim filed by Wells Fargo.

20. On August 29, 2012, the Court entered an amended order requiring the Debtors to make certain payments to Mr. Cantrell and that such prior payments be held in escrow until further order of this Court.[11]

## CONCLUSIONS OF LAW[12]

### I. **Motion to Compel**

  *a. Motion for a Protective Order*

As an initial matter, the Debtors argue that Wells Fargo has failed to properly preserve its objections to the Discovery Requests because it failed to timely file a motion for

---

[10] At the Hearing, the Parties disagreed over what information the Debtors should be required to submit in order to be considered in settlement discussions. In response to this disagreement, Wells Fargo submitted a copy of the financial documentation package. Considering the status of this matter, the Court finds that it is unnecessary to further address this issue at this time.

[11] At the Hearing, counsel for the Debtors indicated that he was holding approximately $1,900 of the Debtors' payments to Wells Fargo in escrow.

[12] This matter initially appears to reflect facts that arise frequently in Chapter 13 cases in this District. The Debtors have proposed a plan which provides that they will remain current in making the postpetition regular mortgage payments to the lienholder on their residence and, after confirmation, they have failed to make those payments resulting in the lienholder filing a motion for relief from stay. More often than not, such motions are ultimately settled by a consent order providing debtors a final opportunity to cure the default with *ex parte* relief from stay being granted in favor of the lienholder if they do not.

However, before any settlement was discussed, this case took a different turn with the Debtors raising a number of issues regarding Wells Fargo's standing, pleadings, and accounts and the service of expansive discovery requests. Before the matter was raised to the Court, the terrain had shifted to a discovery fight, which substantially increased the costs for all parties. As a result, the Court has had to consider several ancillary issues, which are addressed herein.

a protective order pursuant to Fed. R. Civ. P. 26, made applicable through Fed. R. Bankr. P. 7026, and SC LBR 7026. The Court disagrees.

Although the Debtors fail to set forth the specific bases on which they rely on the prior opinions of this Court and only make general references to such opinions to support their position, the Court finds that the Debtors' reliance on the opinions cited to in the Discovery Motion is somewhat misplaced given the facts of this case.

Of the three opinions cited by the Debtors, only In re Adams, C/A No. 04-11179-JW, Adv. No. 04-80339-W (Bankr. D.S.C. February 23, 2005) and Hovis v. Gen. Dynamics Corp. (In re Marine Energy Sys. Corp.), 2006 Bankr. Lexis 718 (Bankr. D.S.C. Mar. 28, 2006) could be considered relevant to the issue of whether a protective order is required in addition to discovery objections to preserve a party's objections. In Adams, the Court was determining whether sanctions were appropriate where the plaintiff failed to follow the Court's scheduling order by failing to submit timely discovery responses. In Marine Energy Sys. Corp., the Court reviewed a plaintiff's objections to interrogatories in the context of a motion to compel. Where information may either be protected by the attorney-client privilege or by the work product doctrine, the Court suggested that the plaintiff could "object and seek a protective order" in accordance with SC LBR 7026-1. In re Marine Energy Sys. Corp., 2006 Bankr. Lexis 718 at *9.

In this case, unlike the plaintiff in Adams, Wells Fargo provided adequate answers and responses, which included its objections to the Discovery Requests. As demonstrated in Marine Energy Sys. Corp., the Court can consider and rule on discovery objections in the absence of a protective order. Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, which govern interrogatories, document production, and requests for admission, all provide

9

a mechanism for the responding party to object without filing a separate motion for a protective order. See Fed. R. Civ. P. 33(b)(4), 34(b)(2)(C), and 36(a)(5).[13] In fact, SC LBR 7026-1(b) expressly provides that:

> Any motion for a protective order shall be filed and served no later than the deadline for response to such discovery. Any objection to any interrogatory, deposition, request, or application under Fed. R. Bankr. P. 7026-7037 shall be in writing and shall also be served no later than the deadline for response to the applicable discovery. **Any such motion or objection** shall not extend the time within which the objecting party must otherwise answer or respond to any other discovery matter.

SC LBR 7026-1(b) (emphasis added). Thus, under the circumstances of this case, the Court agrees with Wells Fargo's position that the plain language of the Local Rule does not require a party objecting to a discovery response to also file a request for a protective order. Therefore, the Court finds that the objections raised by Wells Fargo to the Discovery Requests were properly preserved without separate request for a protective order.

   b. *Additional Grounds for Relief*

In addition to the procedural issue raised by the Debtors, the Discovery Motion includes four other grounds on which the Debtors believe Wells Fargo has failed to adequately respond to the Discovery Requests, either in whole or in part, and asks that Wells Fargo be compelled to provide further responses to such requests. Having reviewed the pleadings and considered the arguments of the Parties at the Hearing, the Court finds that Wells Fargo's responses are adequate. Finding otherwise would elevate form over substance. Furthermore, at this point in the case and considering the Debtors' admitted failure to make postpetition payments in accordance with the confirmed Plan, the critical issue that should be considered is not whether Wells Fargo complied with the Discovery

---

[13] Fed. R. Civ. P. 33, 34, and 36 are made applicable through Fed. R. Bankr. P. 7033, 7034, and 7036 respectively.

Requests in a perfect manner. Instead, the issue is whether more detailed responses to the Debtors' Discovery Requests will provide sufficient benefit to outweigh the associated costs.

Federal Rule of Civil Procedure 26(b)(2)(C) provides, in relevant part, that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> …
>
> (iii) *the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.*

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

The postpetition arrearage due from the Debtors to Wells Fargo was $6,675.20 as of May 1, 2012. Counsel for the Parties agreed at the Hearing that the arrearage would be approximately $10,000 as of September 1, 2012 if payments were not received before the next payment deadline. In addition to the arrearage, the attorneys' fees incurred by the Parties as a result of the Discovery Requests and the Discovery Motion now exceed $30,000 and are poised to increase as a result of the Parties' participation at the Hearing and the pendency of the 362 Motion. Unfortunately, for the Debtors, whatever equity in the Collateral remained at the time of the 362 Motion appears to have been consumed by the attorneys' fees associated with discovery. No further discovery is necessary because any potential benefit that discovery could provide has been surpassed by the expense incurred by

the Parties in requesting and responding to such discovery. The mounting costs of such discovery are just too great to continue.[14]

Therefore, the Discovery Motion is denied in its entirety. Based on the responses of Wells Fargo to the Discovery Requests and the continuously increasing costs additional discovery would place on Wells Fargo and the Debtors, both the burden and the expense of additional compliance with the Discovery Requests and the Discovery Motion clearly outweigh their potential benefit. No additional hearing on the Discovery Motion is required.

## II.    Reasonableness of Fees

Discovery is a double-edged sword because, just as it costs money to prepare discovery requests and motions to compel, responses to such also come at a price. Service of substantial or boilerplate discovery requests on secured creditors in a consumer case can exponentially increase the costs of a case, which are often ultimately borne by the debtor. Therefore, the costs of discovery should be weighed against the potential benefit. At the Hearing, Debtors' counsel argued that RTT's fees were unreasonable, in part because RTT went from representing Wells Fargo on a flat fee basis for the 362 Motion to billing on an hourly basis following the Discovery Requests and the Discovery Motion. The Court disagrees.

The majority of the fees and expenses at issue, including all of the fees related to the Discovery Requests and the Discovery Motion, appear to directly result from the litigation approach of and the pleadings filed by the Debtors. The manner of charging for representation, specifically switching from a flat fee to an hourly rate because of the serious allegations asserted by the Debtors, appears to have been properly executed between Wells

---

[14] The Court has concerns as to why such costly and in-depth discovery was necessary in the first place, given the amount of the Debtors' arrearage. However, at this time, the Court will only address the Discovery Motion and the 362 Motion.

12

Fargo and RTT based on the terms of the Retainer Agreement and also appears reasonable to the Court under the circumstances of this case. This Court notes that, in this District, a debtor's attorney typically charges an initial flat fee when representing a Chapter 13 debtor, which the Debtors' counsel appears to have done here.[15] In the event that significant issues arise in connection with the defense of a motion for relief from stay or other matters, the attorney often subsequently switches his billing method from a flat fee basis to an hourly basis, which Mr. Cantrell also appears to have done in this case.[16] To limit Wells Fargo to representation based on the initial flat fee is simply impractical and inequitable because it would eliminate its ability to adequately respond to the Discovery Requests and the Discovery Motion. Furthermore, such limitation would be contrary to the express terms of the Retainer Agreement.

The attorney's fees and expenses in this matter for which the Debtors may be responsible currently stand at over $30,000 and continue to grow. However, based on the Court's review of the Fee Affidavit, the Retainer Agreement,[17] and the Correspondence, the Court finds that Wells Fargo was within its rights under the Retainer Agreement to allow RTT to transition from a flat fee representation to an hourly representation, particularly in light of the extensive discovery requests submitted by the Debtors. Therefore, the Court finds, on a preliminary basis, that the fees and expenses incurred by RTT during its

---

[15] Paragraph 5 of the Debtors' Disclosure of Compensation of Attorney for Debtor ("Compensation Disclosure") provides that counsel for the Debtors will, among other things, analyze the Debtors' financial situation; prepare the bankruptcy petition, schedules, statement of affairs, and plan; and represent the Debtors at the meeting of creditors and confirmation hearing.

[16] Paragraph 6 of the Compensation Disclosure provides that, "By agreement with the debtor(s), the above disclosed fee does not include the following services: Extra charges governed by standard Chapter 13 retainer agreement." Based on the scope of paragraph 5 of the Compensation Disclosure and the fees set forth in the Fee Breakdown, the defense of the 362 Motion must fall within the scope of paragraph 6.

[17] As noted above, the Court reviewed the Retainer Agreement in camera. To the extent the Debtors request to characterize the Retainer Agreement as discoverable, the Court denies such request.

13

representation of Wells Fargo in these matters are reasonable and were a foreseeable consequence of the Discovery Requests and the Discovery Motion.[18]

Finally, the Court must note that this Order is limited to the facts and circumstances of this case and is not intended to put a chilling effect on the discovery efforts of debtors or creditors. Instead, it should serve to as a reminder to counsel for all parties that they should be mindful of the issues and amounts at issue in the particular case when engaging in substantial and potentially costly discovery requests, particularly a consumer bankruptcy case involving debtors with limited resources and assets.

### III. Motion for Relief from Stay

Based on the record before it, the Court can determine certain issues in advance of a further hearing on the 362 Motion, which is scheduled below for October 4, 2012.

In addition to the three issues specifically addressed below, the Court overrules the 362 Objection to the extent it requires technical perfection and compliance with this District's Local Rules and Forms by Wells Fargo in the 362 Motion. The purpose of this District's Local Rules and Forms is to ensure that both the Court and the parties affected by a particular request for relief have notice of the issues and the positions of the parties. Based on the information set forth in the 362 Motion, the Court finds that Wells Fargo has complied or substantially complied with the requirements of this District's Local Rules and Forms, including the certification of facts accompanying the 362 Motion as amended.[19]

---

[18] The Court reserves making a final determination of specific allowed amounts regarding the reasonableness of the attorneys' fees of both Mr. Cantrell and RTT until either seeks approval of their fees by the Court at a later date and such determination is necessary.

[19] In the 362 Objection, the Debtors objected to Wells Fargo's request to be excused from further compliance with the filing requirement of Fed. R. Bankr. P. 3002.1. The Court has previously declined requests for a waiver of the filing requirements of Fed. R. Bankr. P. 3002.1 and subsequently notified the attorneys who practice before this Court that such requests should not be included in any motion or order. Therefore, the Court finds that Wells Fargo is required to comply with the requirements of Fed. R. Bankr. P. 3002.1.

14

    *a. Standing*

In the 362 Objection, the Debtors "question [Wells Fargo's] standing as a party in interest to seek relief from stay under 362(d), and demand that [Wells Fargo] prove such standing." As this Court has previously noted, when a debtor identifies a party as the proper party in interest to receive payment on a note and mortgage "in their schedules, statements, and proposed plan, *as well as in their confirmed Plan*," absent a greater showing to justify a change in their position, such debtor is barred from asserting that such party is not a party in interest with standing to seek relief from stay. In re Neals, 459 B.R. 612, 617 (Bankr. D.S.C. 2011) (emphasis added). Furthermore, a confirmed chapter 13 plan "represents a new contractual agreement between debtors and their creditors." Id. (citing In re Burretto, 2008 WL 8895361 at *2 (Bankr. D.S.C. July 23, 2008) (citations omitted)). In this case, upon confirmation of the Plan, the Debtors agreed to remain current on their obligations to Wells Fargo, but, as evidenced by the 362 Motion, the Debtors have failed to comply with the terms of the Plan.

Despite efforts by Debtors' counsel to raise issues regarding Wells Fargo's standing at this time, in the end, the Debtors borrowed a sum of money from a third party to finance the Collateral and have yet to pay back that obligation in full. The Plan, the Debtors' Chapter 13 Income Statement, and the Debtors' Schedule D all recognized that obligation and identified Wells Fargo as the proper mortgage creditor. As evidenced by the payment history attached to the Discovery Objection, the Debtors continued to make payments to Wells Fargo through at least April 17, 2012. Furthermore, at the time each of the previous motions for relief from stay was filed by Wells Fargo, the Debtors either made the necessary payments to Wells Fargo or requested a loan modification from Wells Fargo to resolve those

15

motions. The Debtors also never challenged Wells Fargo's standing until their own admitted failure to pay pursuant to the terms of the Plan. The first instance of questioning the legitimacy of the amounts owed to Wells Fargo or the identity of Wells Fargo as the appropriate party to receive payment under the Plan comes via the 362 Objection. The Debtors' challenge to Wells Fargo's standing comes too late.

Furthermore, even if the issue of standing is appropriate for consideration at this time in the case, the Court finds that Wells Fargo has standing. Although Wells Fargo indicated that it sold the Debtors' loan to Freddie Mac on July 15, 2012, it stated that it remained the servicer on the loan and also presented the original (endorsed) Note and the Mortgage at the Hearing.[20] Therefore, the Court concludes that Wells Fargo is a "person entitled to enforce" the Note pursuant to S.C. Code Ann. § 36–3–301. See In re Neals, 459 B.R. at 617-619.

Based on the representations at the Hearing and both the Note and the Mortgage, which were presented at the Hearing and provided to the Court, the Court finds, as it did in Neals, that the Plan in this case is "*res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay."[21] In re Neals, 459 B.R. at 617. Therefore, Wells Fargo has standing to prosecute the 362 Motion. However, in order to provide maximum protection to the Debtors, if the Court subsequently determines that Wells Fargo is not the proper recipient of the payments made by the Debtors, the Court hereby retains jurisdiction and authority to require Wells Fargo to disgorge the amounts received

---

[20] In its Amended and Supplemental Answers to Interrogatories dated July 9, 2012, which was attached as Exhibit A to the Debtors' objection to Wells Fargo's claim, Wells Fargo stated that it "originated the loan and sold it to Freddie Mac on July 15, 2005 but has remained the servicer of the loan."

[21] The Court notes that while the Debtors seek to ignore the Plan as *res judicata* for purposes of standing, the 362 Objection asks the Court to deny Wells Fargo's request for relief, in part, because "confirmation of Debtors' plan is res judicata on the issue of Debtors' residence being necessary for Debtors effective reorganization under the confirmed plan."

and return such funds to the proper party, and order sanctions or other remedies against Wells Fargo and its counsel as appropriate or necessary.

　　*b. Cause*

Under 11 U.S.C. § 362(d)(1),[22] a bankruptcy judge has "broad discretion to determine what constitutes 'cause' sufficient to warrant relief from stay." In re Breibart, 325 B.R. 724 (Bankr. D.S.C. 2004). The Bankruptcy Code does not specifically define "cause." Therefore, courts must examine the totality of the circumstances in each case to determine whether relief is appropriate. See Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992).

A debtor's failure to make postpetition payments to secured creditors, particularly after the confirmation of a Chapter 13 plan, may constitute cause to modify or lift the automatic stay. However, courts are "less inclined to lift the stay where there is equity in the collateral and a debtor's failure to make payments was due to circumstances beyond their control, such as unexpected job loss or illness." Neals, 459 B.R. at 620 (citing Americredit Fin. Servs., Inc. v. Nichols (In re Nichols), 440 F.3d 850, 856 (6th Cir. 2006)). In two recent opinions, this Court has addressed whether a debtor's failure to make postpetition payments pursuant to the terms of a confirmed Chapter 13 plan constitutes cause under § 362(d)(1). See In re Toomer, 2011 WL 8899488 at *3 (Bankr. D.S.C. October 5, 2011) and In re Mitchum, C/A No. 10–06986–JW, slip op. (Bankr. D.S.C. Oct. 20, 2011). In Toomer and Mitchum, the debtors experienced either a job loss or a reduced income stream due to circumstances beyond the debtor's control and sought a reasonable opportunity to cure their post-confirmation default. In both cases, the Court allowed the debtors such an

---

[22]　Further citations to sections of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*) shall be by the cited section number only.

opportunity and denied the creditors' requests for relief from the automatic stay, but provided *ex parte* relief upon any further failure to pay.

In this case, the Debtors have admitted that the failure to pay Wells Fargo pursuant to the Plan was a result, to a great extent, of the need for Mrs. Full to take two months of unpaid maternity leave. However, according to the payment history attached to the Discovery Objection, the Debtors' discontinued making full payments to Wells Fargo after May 2011 and discontinued making any payments to Wells Fargo after April 2012.[23] Mrs. Full gave birth in June 2012.

Furthermore, at the Hearing, counsel for the Parties agreed that while the Debtors may be able to catch up on their regular payments to Wells Fargo during the remaining term of the Plan, which is twenty-four (24) months, it was unlikely that the Debtors would be able to catch up on both the mortgage payments and the costs of litigation that have been incurred. Although it is unclear whether Mrs. Full's decision to take two months of unpaid maternity leave constitutes circumstances beyond the Debtors' control or whether there is any equity remaining in the Collateral as a result of the growing litigation costs in this case, the Debtors must be able to demonstrate that a reasonable cure period is possible in order to operate under the Plan and defeat the 362 Motion.

   c. *Ability to Pay*

At the Hearing, counsel for Wells Fargo indicated that the Debtors would be required to make payments of approximately $1,400 per month for the remaining term of the Plan merely to allow the Debtors to catch up on their delinquent postpetition payments to Wells Fargo and stay current. According to the Amended Schedules, the Debtors have budgeted

---

[23]    Based on the payment history attached to the 362 Motion and the statements of Wells Fargo at the Hearing, Wells Fargo applied the Debtors' partial payments received between June 2011 and April 2012, resulting in the arrearage calculation starting as of November 2011.

18

$937.00 per month for their mortgage payment and indicate an available net income of $626.62 after deducting their monthly expenses. However, these figures do not include the monthly payments of $200.00 to the Chapter 13 Trustee or $141.00 to State Farm Financial Services, both of which are set forth in the Plan. Therefore, if the Debtors were to apply all available net income towards the mortgage payment and the arrearage less the payments to the Trustee and State Farm Financial Services, it appears that the Debtors would only be able to make monthly payments of $1,222.62, which would not be enough to cover the catch up on the postpetition mortgage arrearage payments without factoring any payment of legal fees.

As counsel for the Parties noted at the Hearing, unless the monthly payments were lowered or a settlement agreement was reached to significantly reduce the attorneys' fees, it is likely that the Debtors would be unable to make the necessary payments to Wells Fargo under the remaining term of the Plan to keep the Collateral.[24]

Therefore, at the hearing scheduled for October 4, 2012, the Debtors must demonstrate an ability to make the necessary payments to Wells Fargo either through the term of the Plan or pursuant to some other arrangement in order to prevail on the 362 Objection.

## CONCLUSION

For the foregoing reasons, the Court finds that Wells Fargo has substantially complied with the Debtors' Discovery Requests and that the burden and expenses of continued discovery in this matter outweighs the benefit of any additional discovery. The

---

[24]  At the Hearing, counsel for the Parties indicated that as a means of settlement Wells Fargo would agree to reduce its attorneys' fees by ten percent (10%). However, based on the time and effort spent on this matter by counsel for the Parties at the Hearing and beyond, it is possible that any benefit from the proposed reduction has already been cancelled out by additional fees and expenses.

19

Court also finds that, absent a showing by the Debtors at the October 4, 2012 hearing that they can pay Wells Fargo as required by the Plan, cause exists under § 362(d)(1) to grant such motion. Therefore, it is hereby

    ORDERED that the Discovery Motion is DENIED; it is further

    ORDERED that, to the extent issues raised in the Joint Statement with respect to the Discovery Motion and the Discovery Objection were not addressed in this Order, such issues are now moot and no further hearing is required; and it is further

    ORDERED that the continued hearing on the 362 Motion shall be held before the undersigned at **King and Queen Building, 145 King St., Room 225, Charleston, SC 29401 on October 4, 2012 at 1:00 p.m.**

    **AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**09/24/2012**



*John E Waites*
Chief US Bankruptcy Judge
District of South Carolina

Entered: 09/24/2012